# EXHIBIT 11

# ASSIGNMENT AGREEMENT

### KNOW ALL MEN BY THESE PRESENTS:

That Essex Global Investment Corp. (the "Assignor"), for good and valuable consideration and cash, the receipt and sufficiency of which are hereby acknowledged, does hereby assign the remaining balance of that certain promissory note issued by GenTech Holdings, Inc., fka Pocket Games, Inc., a Florida corporation (the "Company"), dated July 10, 2019, in the face amount of $100,000, which balance, inclusive of principal, interest and penalties accrued thereon is $105,315.07 (the "Note").

The Assignor covenants and agrees to, on behalf of and for the benefit of the Assignee, warrant and defend title to the Note hereby sold and assigned to the Assignee, against all and every person and persons whomsoever. The Assignor warrants that it is the lawful holder in every respect of the Assigned Amount and that the Assigned Amount is held free and clear of any and all liens, security agreements, encumbrances, claims, demands and charges of every kind and character whatsoever.

IN WITNESS WHEREOF, the Assignor has executed this Assignment as of the 21st day of February, 2020.

"Assignor"

Essex Global Investment Corp.

By: _____
Ben Conde, President

1

# NOTE PURCHASE AGREEMENT

This Note Purchase Agreement (this "Agreement") is made and entered into as of the 21st day of February, 2020, by and between Essex Global Investments Corp., a Nevada corporation (the "Seller"), and East Capital Investment Corp., a New Jersey corporation (the "Purchaser"), collectively referred to herein as the "Parties" or individually as a "Party".

W I T N E S S E T H:

WHEREAS, Seller is the holder of a certain promissory note issued by GenTech Holdings, Inc., fka Pocket Games, Inc., a Florida corporation (the "Company"), dated July 10, 2019, in the face amount of $100,000 (the "Note"), a copy of which is attached hereto as Exhibit A; and

WHEREAS, pursuant to the representations in Section 4.2 herein, the balance of the Note as of the date hereof, inclusive of principal, interest and penalties accrued thereon is $105,315.07; and

WHEREAS, the Seller desires to sell all of its rights, title and interest to the Note to Purchaser, and the Purchaser desires to purchase the Note from the Seller in consideration for Buyer's forgiveness of certain liabilities due and payable to the Buyer by Seller, and such other consideration and undertakings as more particularly hereinafter described.

NOW THEREFORE, in consideration of the mutual covenants, agreements, conditions, representation, and warranties contained in this Agreement, the Seller and the Purchaser hereby agree as follows:

1. PURCHASE AND SALE OF THE ASSIGNED PORTION OF THE NOTE

1.1  **Purchase and Sale of Assigned Portion of Note**.  Subject to the terms and conditions of this Agreement, the Seller hereby agrees to sell and assign to the Purchaser and the Purchaser hereby agrees to acquire from the Seller the Note in exchange for the forgiveness of certain debts payable on the books and records of the Company to Buyer and its affiliates in the amount of Sixty-Six Thousand Nine Hundred Four Dollars and 99/100 (US $66,904.99).

1.2  **Closing.**  The purchase and sale of the Note shall take place at such time and place as the Seller and Purchaser shall mutually agree (which time and place are designated as the "**Closing**").  At the Closing, the Seller shall deliver to the Purchaser (i) a duly executed Assignment Agreement in the form attached hereto as Exhibit B; and (ii) a duly executed Settlement and Release Agreement in the form attached hereto as Exhibit C with respect to the purchase price hereunder.

1

2. REPRESENTATIONS AND WARRANTIES OF THE SELLER

      As a material inducement to the Purchaser to enter into this Agreement, the Seller makes the following representations and warranties to the Purchaser as of the date of this Agreement and as of the Closing:

2.1    Organization, Standing, and Qualification. The Seller is duly organized, validly existing, and in good standing under the laws of Nevada. The Seller has full corporate power and authority to enter into this Agreement and this Agreement has been duly and validly authorized, executed and delivered by the Seller and is a valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, except as such enforcement may be limited by the United States Bankruptcy Code and laws affecting creditors' rights, generally.

2.2    Authorization. All action on the part of the Seller and its directors, officers and shareholders necessary for (i) the authorization, execution, delivery, and performance of all the obligations of the Seller under this Agreement and the consummation of the transactions contemplated herein, and (ii) the authorization, issuance, execution, and delivery of the Agreement and Assignment by the Seller hereunder have been taken by such officers and directors. This Agreement constitutes a valid and binding obligation of the Seller enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, and moratorium laws and other laws of general application affecting enforcement of creditors' rights generally and to general equitable principles. The Seller has provided the Purchaser and its counsel with true and accurate copies of the appropriate resolutions of directors and shareholders relating to this transaction and effective as of the date of this Agreement and the Seller undertakes that it will procure that all such resolutions remain in full force and effect as of the Closing.

2.3    Title to the Note. The Seller has good and marketable title to the Note, free and clear of any and all restrictions on or conditions to transfer or assignment, and free and clear of any and all liens, claims, mortgages, pledges, charges, equities, easements, rights of way, covenants, conditions, security interests, encumbrances, or restrictions.

2.4    Agreement Will Not Cause Breach or Violation. The consummation of the transactions contemplated by this Agreement will not result in any violation of or constitute a default or an event that, with notice or lapse of time, or both, would conflict with or constitute a breach or default of the Articles of Incorporation or Bylaws of the Seller (as amended or restated) or of any material contract of the Seller or any applicable provision of state or federal law and will not result in the creation or imposition of any lien or encumbrance on any of the Seller's property.

3. REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

3.1    Authorization. The Purchaser represents and warrants that all action on the part of Purchaser necessary for the authorization, execution, delivery, and performance of all the obligations of Purchaser under this Agreement has been taken prior to the Closing and that

2

this Agreement constitutes a valid and legally binding obligation of Purchaser enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, and moratorium laws and other laws of general application affecting enforcement of creditors' rights generally and to general equitable principles.

3.2   "Accredited Investor". The Purchaser represents that it is an "accredited investor" as such term is defined in the SEC's Rule 501 under Regulation D.

3.3   Transfer or Resale. Purchaser acknowledges that the Note has not been registered under the Securities Act or any state securities laws, and may not be offered for sale, sold, assigned or transferred unless an opinion of counsel, in a generally acceptable form, to the effect that such Securities to be sold, assigned or transferred may be sold, assigned or transferred pursuant to an exemption from such registration requirements.

5.   MISCELLANEOUS PROVISIONS

5.1   Modifications and Waivers. This Agreement may not be amended or modified, nor may the rights of any Party hereunder be waived, except by a written document that is executed by the Purchaser and the Seller.

5.2   Assignment. This Agreement is and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

5.3   Rights and Obligations of Third Parties. Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and permitted assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third parties to any party to this Agreement, nor shall any provision give any third party any right of subrogation or action against any party to this Agreement.

5.4   Notices. Any notice, request, consent, or other communication hereunder shall be in writing, and shall be sent by one of the following means: (i) by registered or certified first class mail, postage prepaid; (ii) by facsimile transmission; (iii) by reputable overnight courier service; or (iv) by personal delivery, and shall be properly addressed as follows:

If to the Seller, to:

_____
_____

If to the Purchaser, to:

_____
_____

3

FILED: NEW YORK COUNTY CLERK 10/27/2021 06:17 PM
NYSCEF DOC. NO. 25

INDEX NO. 656202/2021
RECEIVED NYSCEF: 10/27/2021

Case 1:21-cv-10300-LLS Document 9-11 Filed 12/10/21 Page 6 of 8

or to such other address or addresses as the Seller or the Purchaser shall hereafter designate to the other Party in writing. Notices sent by mail or by courier shall be effective seven (7) days after they are sent, and notices delivered personally or by facsimile shall be effective at the time of delivery thereof.

5.2 **Entire Agreement**. This Agreement constitutes the entire agreement between the parties hereto in relation to the subject matter hereof. Any prior written or oral negotiations, correspondence, or understandings relating to the subject matter hereof shall be superseded by this Agreement and shall have no force or effect. The representations, warranties, covenants and agreements made herein shall survive any investigation made by the Purchaser.

5.3 **Severability**. If any provision which is not essential to the effectuation of the basic purpose of this Agreement is determined by a court of competent jurisdiction to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of the remaining provisions of this Agreement.

5.4 **Headings**. The headings of the Sections of this Agreement are inserted for convenience of reference only and shall not affect the construction or interpretation of any provisions hereof.

5.5 **Counterparts**. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all of which together shall constitute one and the same instrument.

5.6 **Expenses**. Each Party shall bear and pay the legal and other expenses incurred in connection with negotiating and preparing this Agreement on its behalf.

5.7 **Governing Law**. This Agreement shall be construed in accordance with and governed by the laws of the State of New Jersey.

5.8 **Delays or Omissions**. No delay or omission to exercise any right, power, or remedy accruing to either Party, upon any breach or default of the other Party under this Agreement, shall impair any such right, power, or remedy, nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of either Party of any breach or default by the other Party under this Agreement, or any waiver of any provisions or conditions of this Agreement must be made in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to either Party, shall be cumulative and not alternative.

5.9   <u>Attorneys' Fees</u>.  If either Party elects to pursue legal action to enforce its rights under this Agreement, and if a court of competent jurisdiction adjudicates the matter, then the prevailing party in such action shall be entitled to receive from the losing party all costs and expenses, including but not limited to the reasonable fees of attorneys, accountants, and other experts, incurred by the prevailing party in investigating and prosecuting (or defending) such action at the initial trial and appellate levels.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

SIGNATURE PAGE TO NOTE PURCHASE AGREEMENT

IN WITNESS WHEREOF, the Seller and the Purchaser have each caused this Note Purchase Agreement to be executed by their duly authorized representatives to be effective as of the day and year first above written.

SELLER: Essex Global Investments Corp.

By _____
Ben Conde, President

PURCHASER: East Capital Investment Corp.

By _____
Christopher Danzi, Chief Executive Officer

Acknowledged and Agreed:

VINCENT DANZI

By _____
Vincent Danzi, individually

PHYLLIS DANZI

By _____
Phyllis Danzi, individually

6