UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                       :

EAST CAPITAL INVESTMENT CORP,     :

                                   :     Case No.:  1:21-civ-10300-LLS

                       Plaintiff,    :
      -against-                     :
                                     :

GENTECH HOLDINGS, INC.,          :                         :
                                   :
                    Defendant.  :
                                   :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(3) AND/OR 12(b)(6) AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT

CARMEL, MILAZZO & FEIL, LLP
Christopher Milazzo, Esq.
55 West 39th Street, 18th Floor
New York, New York 10018
(212) 658-0458
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 3

    I.   The Court Should Deny Defendant's Motion Pursuant To Fed. R.
        Civ. P. 12(b)(6) To Dismiss This Action ........................................................ 3

        A.  Standards On A Motion To Dismiss Pursuant To Fed. R. Civ.
              P. 12(b)(6) ............................................................................................. 3

        B.  The Notes Are Not Void Based Upon Essex's Failure To
              Register As A Dealer Under The Exchange Act ................................... 4

        C.  Note 1 Is Not Usurious Under Nevada Law Which Governs
              Note 1 ................................................................................................... 8
              1.  Note 1 Is Governed By Nevada Law ............................................... 9
              2.  Nevada Does Not Limit The Rate Of Interest .............................. 10

        D.  Even If Florida Law Applies, Note 1 Is Not Usurious ....................... 11
              1.  Note 1 Does Not Charge A Usurious Rate Of Interest ................. 12
              2.  Defendant Cannot Establish That Plaintiff Acted With The
                   Requisite Intent ............................................................................ 14

    II.  The Court Should Deny Defendant's Motion To Dismiss This Action
        With Respect To Notes 2-8 Under Fed. R. Civ. P. 12(b)(3) ........................... 15

    III. The Court Should Grant Plaintiff's Motion For Summary Judgment ............ 18

    IV. CONCLUSION ............................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abramowitz v. Barnett Bank of W. Orlando*,
    394 So.2d 1033 (Fla. DCA 1981)……..………………………………………………..13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………..………………………………………………………3

*Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*,
    571 U.S. 49 (2013)…………..………………………………………………………16

*ATSI Commun. Inc. v. Shaar Fund Ltd*,
    493 F.3d 87 (2d Cir. 2007)…………..………………………………………………...4

*Augustine v. Cornell Univ.*,
    2016 WL 894533 (S.D.N.Y., Mar. 8, 2016)…………………………………………4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)…………..………………………………………………………3

*Dane v. UnitedHealthcare Ins. Co.*,
    974 F.3d 183 (2d Cir. 2020)…………………………………………………………3

*Dixon v. Sharp*,
    276 So.2d 817 (Fla. 1973)……………………………………………………11, 14

*El Basty v. AmGuard Ins. Co.*,
    412 F. Supp.3d 267 (E.D.N.Y. 2019)…..……………………………………………4

*Ellan Corp., Inc. v. Dongwang Int'l Co., Ltd.*,
    2010 WL 1379782 (S.D.N.Y., Apr. 2, 2010)……………………………………4

*EMA Fin. LLC v. NFusz, Inc.*,
    444 F. Supp.3d 530 (S.D.N.Y. 2020)………………………………………………9

*EMA Financial, LLC v. Vystar Corp., Inc.*,
    2021 WL 1177801 (S.D.N.Y., Mar. 29, 2021)……………………………5-7

*Foundation Ventures, LLC v. F2G, Ltd.*,
    2010 WL 3187294 (S.D.N.Y., Aug. 11, 2010)……………………………………5, 7

*Frati v. Slazstein*,
    2011 WL 1002417 (S.D.N.Y., Mar. 14, 2011)………………………………………………7

*Jersey Palm-Gross, Inc. v. Paper*,
    639 So.2d 664 (Fla. DCA 1994)………………………………………………………14

*Jersey Palm-Gross, Inc. v. Paper*,
    658 So.2d 531 (Fla. 1995)………………………………………………………………...14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)……………………………………………………………………9

*Law Office of James G. Dodrill II, PA v. Datameg Corp.*,
    2008 WL 11412078 (S.D. Fla., Jun. 23, 2008)…………………………………………15

*LG Capital Funding, LLC v. Exeled Holdings, Inc.*,
    2018 WL 6547160 (S.D.N.Y., Sep. 28, 2018)………………………………………..6-8

*Licensed Practicing Nurses Technicians and Health Care Workers of N.Y., Inc.*
*v. Ulysses Cruises, Inc.*,
    131 F. F. Supp.2d 393 (S.D.N.Y. 2000)………………………………………………16

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)……………………………………………………………16

*Mindlin v. Davis*,
    74 So.2d 789 (Fla. DCA 1954)………………………………………………………...13

*Naples Cay Devel. Corp. v. Ferris*,
    555 So.2d 1272 (Fla. DCA 1989)………………………………………………………...11

*Omega Overseas Partners, Ltd.*,
    2014 WL 3907082 (S.D.N.Y., Aug. 7, 2014)………………………………………………...7

*Pearson Cap. Partners LLC v. James River Ins. Co.*,
    151 F. Supp.3d 392 (S.D.N.Y. 2015)…..………………………………………………4

*Power Up Lending Group Ltd. v. Alliance Bioenergy Plus, Inc.*,
    2019 WL 1322621 (S.D.N.Y., Feb. 28, 2019)…………………………………………9-10

*Rollins v. Odom*,
    519 So.2d 652 (Fla. DCA 1988)………………………………………………………12

*SEC v. Fierro*,
    2020 WL 7481773 (D.N.J., Dec. 18, 2020)…………………………………………………8

*SEC v. Keener*,
    2020 WL 4736205 (S.D. Fla., Aug. 14, 2020)…………………………………………………8

*Slomiak v. Bear Stearns & Co.*,
    597 F. Supp. 676 (S.D.N.Y. 1984)…………………………………………………………...5

*Superior Funding Corp. v. Big Apple Cap. Corp.*,
    738 F. Supp.1468 (S.D.N.Y. 1990)…………………………………………………………9

*Tatro v. Homecomings Fin. Network, Inc.*,
    2011 WL 240255 (D. Nev., Jan 20, 2011)…………………………………………………10

*Tinoco v. Thesis Painting, Inc.*,
    2017 WL 52554 (D. Md., Jan. 3, 2017)…………………………………………………...16

*U.S. Security Holdings, Inc. v. Andrews*,
    2021 WL 796687 (S.D.N.Y. 2021)…………………………………………………………17

*Valliappan v. Cruz*,
    917 So.2d 257 (Fla. DCA 2005)…………………………………………………………11

*Video Trax, Inc, v. Nationsbank, NA*,
    33 F. Supp2d 1041 (S.D. Fla. 1998)…………………………………………………………14

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*,
    7 N.Y.3d 624, 859 N.E.2d 498, 825 N.Y.S.2d 692 (2006)…………………………………9

*Willis Re Inc. v. Herriott*,
    2021 WL 3204764 (S.D.N.Y., Jul. 22, 2021)…………………………………………………10

*Woodling v. Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987)…………………………………………………………………9

*World O World Corp. v. Patino*,
    306 So.3d 1044 (Fla. DCA 2020)…………………………………………………………...12

*Zerman v. Jacobs*,
    510 F. Supp. 132 (S.D.N.Y.), aff'd 672 F.2d 901 (2d Cir. 1981)…………………………5

Statutes

15 U.S.C. § 78cc(b)……………………………………………………………………………..5

15 U.S.C. § 78o(a)(1)……………………………………………………………………………5

28 U.S.C. 1441…………………………………………………………………………………16

Fed. R. Civ. P. 12(b)(3)………………………………………………………………..1-2, 15-16

Fed. R. Civ. P. 12(b)(6)………………………………………………………………….1, 3-4

Fl. St. Ann. § 687.071(2)………………………………………………………………………11

Fl. St. Ann § 687.071(3)………………………………………………………………….12, 14

N.R.S. 99.050, NV ST 99.050..…………………………………………………………10-11

Plaintiff East Capital Investments Corp. ("Plaintiff" or "ECIC"), by and through its attorneys, Carmel, Milazzo & Feil, LLP, respectfully submits this Memorandum of Law in opposition to the cross-motion of Defendant GenTech Holdings, Inc. ("GenTech" or "Defendant"), pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) to dismiss this action, and in further support of Plaintiff's motion for summary judgment in lieu of complaint.[1]

## PRELIMINARY STATEMENT

In a shameless attempt to avoid its obligations to pay the amounts due and owing under the Notes, Defendant cross-moves to dismiss this action, asserting that the Notes are void and unenforceable, or alternatively, that the portion of this action for the enforcement of Notes 2-8 should be dismissed on the ground that venue is improper in this District. As discussed below, Defendant's defenses fail as a matter of law.

First, Defendant contends that the Notes are void under Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act") because Essex (the payee of the Notes and the entity which assigned the Notes to Plaintiff) was required to register as a broker dealer pursuant to Section 15 of the Exchange Act. In making this argument, Defendant purports to go into great detail regarding the nature of Essex's business, its criminal issues, and the history of the transactions between Essex and GenTech. However, these facts are irrelevant, as this defense fails as a matter of law based on a simple reading of the Notes. Indeed, as discussed below, because the Notes did not *require* Essex (or Plaintiff) to act as a broker-dealer, or otherwise violate the securities laws, the Notes are not void, and are therefore enforceable.

---

[1] Unless otherwise defined herein, the capitalized terms shall have the same meanings as those ascribed to them in Plaintiff's moving papers.

Second, Defendant contends that, under Florida law, Note 1 is criminally usurious and unenforceable.  Note 1, however, contains a choice of law clause that provides that Nevada law governs Note 1.  Nevada law does not have limitations on the amount of interest a lender can charge a borrower.  Defendant, recognizing this, argues that the Court should disregard the Nevada choice of law clause, and apply Florida law (which provides for a 25 percent limit on interest) because Nevada lacked a sufficient connection to Note 1.  As discussed below, Defendant's contention is without merit because Essex's incorporation in Nevada provides a sufficient connection to uphold a choice of law clause.  Further, even if the Court determines that Florida law governs, Note 1 is not usurious under Florida law because its effective interest rate does not exceed 25 percent per annum.

Third, in the alternative, Defendant seeks dismissal of this action under Fed. R. Civ. P. 12(b)(3) with respect to Notes 2-8 on the grounds that venue is improper because these Notes provide for exclusive venue in the Florida state courts.  As discussed below, Defendant is incorrect. It is settled law that Rule 12(b)(3) is not the proper procedural vehicle to enforce a forum selection clause.  Further, Defendant waived its right to enforce the forum selection clause by seeking this Court's determination on the substantive issue of whether Notes 2-8 were void under Section 29(b) of the Exchange Act.  Additionally, since no party is presently located in Florida, and there is no argument that the issue of enforcement of Note 1 is properly before this Court, the forum selection clause would serve no legitimate purpose.  In fact, it would result in judicial inefficiency by requiring actions in two different courts.

In sum, Defendant's legal defenses to the Notes all fail as a matter of law.  Defendant has failed to raise a triable issue of fact that would preclude summary judgment on the Notes.  Indeed,

it is undisputed that Defendant executed the Notes in favor of Essex, that Plaintiff is the holder of the Notes, and that Defendant failed to pay the Notes in accordance with their terms.

Accordingly, the Court should deny Defendant's cross-motion to dismiss this action and should grant Plaintiff's motion for summary judgment on the Notes in its entirety.

## ARGUMENT

### POINT I

### THE COURT SHOULD DENY DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6) TO DISMISS THIS ACTION

Defendant asserts that this action should be dismissed, as a matter of law, on two grounds. First, Defendant asserts that the Notes are all void under Section 29(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") because Essex (the original payee under the Notes) was required to register as a broker-dealer under the Exchange Act and failed to do so. Second, Defendant contends that Note 1 is usurious, and is therefore void and unenforceable. As discussed below, Defendant's contentions are without merit.

#### A.  Standards on a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when a plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

In deciding a 12(b)(6) motion, the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Dane v. UnitedHealthcare*

*Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).  The court should not dismiss a complaint under Rule 12(b)(6) if the factual allegations "raise a right to relief above the speculative level."  *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp.3d 392, 399 (S.D.N.Y. 2015) (quoting *Twombly*, 550 U.S. at 555).  The function of a court in deciding a motion to dismiss is to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be presented at trial.  *See id.*; *see also El Basty v. AmGuard Ins. Co.*, 412 F. Supp.3d 267, 269 (E.D.N.Y. 2019).  Indeed, a well-pleaded complaint may proceed even if proof of the facts alleged are improbable and that an ultimate recovery is unlikely.  *See Twombly*, 550 U.S. at 556; *see also Augustine v. Cornell Univ.*, 2016 WL 894533, at *3 (S.D.N.Y., Mar. 8, 2016).

In determining a Rule 12(b)(6) motion, "a court may not consider evidence proffered by the moving party."  *See Ellan Corp., Inc. v. Dongwang Int'l Co., Ltd.*, 2010 WL 1379782, at *7 (S.D.N.Y., Apr. 2, 2010) (citations omitted).  Instead, the Court is limited to reviewing the four corners of the complaint, any documents attached to the complaint or incorporated therein by reference, and facts of which the Court may take judicial notice.  *See id.* (citing *ATSI Commun. Inc. v. Shaar Fund Ltd*, 493 F.3d 87, 98 (2d Cir. 2007)).

### B.  The Notes Are Not Void Based Upon Essex's Failure to Register as a Dealer Under the Exchange Act

Defendant, relying largely on extrinsic evidence, contends that Essex was required to register as a dealer under Section 15 of the Exchange Act because it was engaged in the purchasing and selling of securities.  (Defendant's Mem. at 8-13.)  Defendant asserts that because Essex was buying and selling securities (through the Notes and otherwise) as part of its ordinary business, it was acting as an unregistered dealer in violation of Section 15 of the Exchange Act.  As a result of Essex's purported failure to register, Defendant argues the Notes are void under Section 29(b) of the Exchange Act and are thus unenforceable.  Defendant's argument misses the point.

Pursuant to Section 15 of the Exchange Act, "[i]t shall be unlawful for any broker or dealer . . . to make use of the mails or any other means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of any security . . . unless such broker or dealer is registered . . ."  15 U.S.C. § 78o(a)(1).  Under Section 29(b) of the Exchange Act:

> Every contract made in violation of any provision of this title or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of , any provision of this title or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . . .

15 U.S.C. § 78cc(b).  Contracts made in violation of Section 29(b) are not void *per se* but are voidable at the option of the option of the innocent party.  *Foundation Ventures, LLC v. F2G, Ltd*., 2010 WL 3187294, at *6 (S.D.N.Y., Aug. 11, 2010).

To establish a violation of Section 29(b), a plaintiff must establish that: (1) the contract involved a prohibited transaction; (2) he or she is in contractual privity with the defendant; and (3) he or she is the class of persons the Exchange Act was designed to protect.  *See EMA Fin., LLC v. Vystar Corp*., Inc., 2021 WL 1177801, at *2 (S.D.N.Y., Mar. 29, 2021) (citing *Pompano -Windy City Partners, Ltd. v. Bear Stearns & Co*., 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992)).  It is well-settled that, under Section 29(b), only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts.  *See EMA Financial, LLC v. Vystar Corp., Inc*., 2021 WL 1177801 at * 2(S.D.N.Y., Mar. 29, 2021); s*ee also Slomiak v. Bear Stearns & Co*., 597 F. Supp. 676, 682 (S.D.N.Y. 1984); *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y.), aff'd 672 F.2d 901 (2d Cir. 1981).

Where, as here, nothing in the operative agreement requires the plaintiff to take any action in violation of the Exchange Act, courts have held that such a contract is not void under Section 29(b) of the Exchange Act. For example, in *LG Capital Funding, LLC v. Exeled Holdings, Inc*., 2018 WL 6547160 (S.D.N.Y., Sep. 28, 2018), the Court granted summary judgment in favor of the plaintiff on claims for breach of a stock purchase agreement and convertible promissory note. In rejecting the defense that the convertible note was void because the plaintiff was required to register as a "dealer" under the Exchange Act, the Court held as follows:

> [Defendant's] tenth and eleventh affirmative defenses, which assert that [plaintiff's] suit is barred because [plaintiff] failed to register as a "dealer" (as the term is defined in Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. 780(a)(1) . . . also fail.  Although it is an open question on this record whether [plaintiff] should have registered as a "dealer" with the SEC – and though [plaintiff] may face substantial exposure in a suit by the SEC if it should have registered but did not – the Court concludes that even if [plaintiff] should have registered, nothing in the [convertible] Note or SPA indicates that those contracts "could not have been legally performed" because [plaintiff] failed to do so. . . .

*Id.* at *5.

The Court found that nothing in the convertible note or the securities purchase agreement required plaintiff to take any action that would violate the statute.  *Id.* at *5.  The Court further found that, while plaintiff may have acted improperly when it sold off shares it had received pursuant to conversions, nothing in the convertible note or the securities purchase agreement required it to act as a broker or dealer.  *Id.*  Therefore, the Court determined that the convertible note and securities purchase agreements were capable of performance even if plaintiff failed to register as a dealer, and therefore, the convertible and stock purchase agreement were not voidable, unlawful contracts.  *Id.*

Likewise, in *EMA Financial, LLC v. Vystar Corp.*, the Court also rejected the argument that a convertible note was voidable based upon the fact that the plaintiff improperly failed to

register as a "broker-dealer". 2021 WL 1177801 at *2-3.  In granting summary judgment dismissing the affirmative defense and counterclaim based upon the plaintiff's failure to register as a broker-dealer, the Court, following the reasoning in *LG Capital*, found that nothing in the subject agreements (a securities purchase agreement and convertible note) required plaintiff to act as an unregistered broker-dealer in violation of the Exchange Act.  *Id.* at *3.  Therefore, the Court held that the convertible notes were not made or performed in violation of any securities laws and were not voidable under Section 29(b) of the Exchange Act.  *Id.*; *see also Frati v. Slazstein*, 2011 WL 1002417, at *6 (S.D.N.Y., Mar. 14, 2011) (holding that contract not subject to recission under Section 29(b) based upon the plaintiff's failure to register as a broker-dealer because there was nothing in the contract that required the plaintiff to be registered as a broker-dealer and no reason to believe that the contracts could not have been legally performed); *Omega Overseas Partners, Ltd.*, 2014 WL 3907082, at *4-5 (S.D.N.Y., Aug. 7, 2014) (collecting cases and holding that Section 29(b) only voids contracts that are illegally made or require illegal performance); *Foundation Ventures, LLC*, 2010 WL 3187294, at *6 (finding that contract was not voidable under Section 29(b) where it did not require the plaintiff to act as a broker in violation of the Exchange Act).[2]

---

[2] In *EMA Financial LLC v. Vystar Corp.* 336 F.R.D. 75 (S.D.N.Y. 2020), in connection with a motion to stay discovery, Magistrate Gorenstein found that a convertible promissory note and stock purchase agreement were not void because the plaintiff allegedly failed to register as a broker-dealer.  The Court, in addressing the same argument Defendant makes here, explained that

> The flaw in [defendant's] argument, however, is that it does not identify a provision in the contracts that obligates [plaintiff] to act as a broker-dealer.  Certainly, [defendant] contends that [plaintiff] has acted as a broker-dealer by converting the shares at a below-market rate and selling the shares. . . . [A]ssuming arguendo that the selling of those shares made [plaintiff] a broker-dealer, the selling of the shares was not required by the contract.  Thus, at the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws.

*Id.* at 81-82.

Here, nothing in the Notes requires Plaintiff to act as a broker or dealer and, like in *LG Capital Funding* and *EMA Financial*, the Notes here could be legally performed without Plaintiff acting as a as a dealer.  Specifically, nothing in the Notes explicitly required Plaintiff to act as a broker or a dealer, nor do they require Plaintiff to do anything that would violate the Exchange Act or any other securities laws.  Nothing in the Notes required Essex to convert the principal to stock of GenTech, nor did it require Essex to sell such stock if it decided to convert.  Simply put, the Notes were capable of performance in a lawful manner, and are therefore, not voidable under Section 29(b).  Indeed, even if Plaintiff had converted the Notes to stock (which it did not), the Notes were still capable of being legally performed at the time they were entered into, and nothing in the Notes required Plaintiff to act as a broker-dealer.[3]

Accordingly, the Notes are not voidable, and the Court should deny Defendant's cross-motion to dismiss this action.

### C.  Note 1 Is Not Usurious Under Nevada Law Which Governs Note 1

Defendant next contends that Note 1 is criminally usurious and unenforceable.  In making this argument, Defendant ignores the choice of law provision in Note 1, which provides that Nevada law governs. (Milazzo Aff. Exh. 1 § 14.)  Instead, Defendant asserts that, under Florida law, Note 1 is criminally usurious and unenforceable because the interest on the Note exceeds 25 percent.  As discussed below, Defendant's contention is entirely without merit.

---

[3] The cases cited by Defendant are inapposite, as all they were enforcement actions brought by the Securities and Exchange Commission to assert claims for violations of Section 15 of the Exchange Act against persons that acted as unregistered dealers.   These actions did not seek to void agreements between private parties based upon the alleged failure of a person or entity to register as a dealer.  *See SEC v. Fierro*, 2020 WL 7481773, at *3 (D.N.J., Dec. 18, 2020); *SEC v. Keener*, 2020 WL 4736205, at *4 (S.D. Fla., Aug. 14, 2020).

### 1.   Note 1 is Governed by Nevada Law

Defendant's entire argument that Note 1 is void as usurious hinges on whether the Court applies Nevada law as provided in Note 1, or, as Defendant urges, it applies Florida law.  Nevada law does not have any proscription against usurious interest rates, while Florida does.  Defendant asks this Court to disregard the choice of law provision that designates Nevada law as the law the governs Note 1. Defendant argues that there is not a sufficient connection with Nevada for the Court to enforce the choice of law clause in Note 1.  Defendant is incorrect.

A federal court sitting in diversity applies the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) superseded by statute on other grounds.  Where the contract has a choice of law clause, courts apply New York's choice of law rules "to determine whether and to what extent the parties' contractual choice should be honored." *EMA Fin. LLC v. NFusz, Inc.*, 444 F. Supp.3d 530, 540 (S.D.N.Y. 2020) (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987)).

It is well-established that New York courts will generally enforce a choice of law clause where the chosen law bears a reasonable relationship to the parties or the transaction at issue.  *See Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 859 N.E.2d 498, 500, 825 N.Y.S.2d 692 (2006*); see also Power Up Lending Group Ltd. v. Alliance Bioenergy Plus, Inc.*, 2019 WL 1322621, at *3 (S.D.N.Y., Feb. 28, 2019); *EMA Fin., LLC*, 444 F. Supp.3d at 540; *Superior Funding Corp. v. Big Apple Cap. Corp.*, 738 F. Supp.1468, 1471 (S.D.N.Y. 1990).  As the Court explained in *Power Up Lending Grp., Ltd. v. Alliance Bioenergy Plus, Inc.*:

> Generally [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction. . . .  This is because a basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent.

2019 WL 1322621, at *3 (E.D.N.Y., Feb. 28, 2019) (internal quotations omitted) (citations omitted).

Contrary to Defendant's contention, Courts have consistently held that a party's incorporation in the state of the parties chosen law is sufficient for purposes of establishing a reasonable relationship. *See, e.g.*, *Power Up Lending Grp., Ltd. v. Alliance Bioenergy Plus, Inc*., 2019 WL 1322621, at *4 (holding that the fact that the plaintiff was incorporated in Virginia established the necessary reasonable relationship to enforce a Virginia choice of law clause in convertible note and securities purchase agreement); *Willis Re Inc. v. Herriott*, 2021 WL 3204764, at *17 (S.D.N.Y., Jul. 22, 2021) (recognizing that "most courts deemed one party's place of incorporation in the state of the parties' chosen law sufficient for purposes of" establishing a reasonable relationship) (citations and internal quotations omitted); *EMA Fin. LLC*, 444 F. Supp.3d at 540 (finding that "courts in this Circuit have deemed one party's incorporation in the state of the parties' chosen law sufficient for the purposes of the 'reasonable relationship' test").

Here, it is undisputed that Essex was a corporation formed in Nevada. (*See* Milazzo Aff. Exh. 1; Lovatt Decl. ¶ 7.) Essex was the lender under Note 1 and later assigned its right, title, and interest to Note 1 to Plaintiff. (Danzi Aff. ¶ 3-5.) Since Essex was a Nevada corporation at the time Note 1 was executed, there is a sufficient relationship to enforce the choice of law clause designating Nevada's law as governing.

Accordingly, the Court should find that Nevada law applies to Note 1. Thus, any claim or defense raised by either party are governed by Nevada law.

### 2. Nevada Does Not Limit the Rate of Interest

Nevada has not had a usury law since 1981. *See Tatro v. Homecomings Fin. Network, Inc*., 2011 WL 240255, at * 2 (D. Nev., Jan 20, 2011). Indeed, pursuant to N.R.S. 99.050, except with

respect to consumer credit, "parties may agree for the payment of any rate of interest on money due or to become due on any contract . . . ."  N.R.S. 99.050, NV ST 99.050.

Because Nevada has no usury law and expressly permits parties to agree to any rate of interest, Defendant's usury defense fails as a matter of law.

### D.  Even if Florida Law Applies, Note 1 Is Not Usurious

Even if the Court determines that Florida law should apply to Note 1 – which it should not – Note 1 is not usurious under Florida law.  Defendant asserts that Note 1 is criminally usurious and unenforceable because when accounting for the original issuance discount, the amounts deducted for administrative and legal costs and the interest rate, the rate exceeds 25 percent, and is criminally usurious.  Defendant is wrong.

Pursuant to Fla. St. Ann 687.071(2):

> Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Fl. St. Ann. § 687.071(2) (West 2020).

Under Florida law, in order to establish the defense of usury, a defendant must establish: (1) an express or implied loan; (2) an understanding between the parties that the money lent is to be returned; (3) an agreement to pay a greater rate of interest than permitted by law; and (4) a corrupt intent to take more than the legal rate of interest.  *See Dixon v. Sharp*, 276 So.2d 817, 819-20 (Fla. 1973).  Usury is an affirmative defense for which the defendant bears the burden of proving by clear and convincing evidence.  *See id.*; *see also Naples Cay Devel. Corp. v. Ferri*s, 555 So.2d 1272, 1273 (Fla. DCA 1989); *Valliappan v. Cruz*, 917 So.2d 257, 259-60 (Fla. DCA

2005) ("He who alleges usury to avoid or defeat and obligation to pay money must establish his charge by clear and satisfactory evidence") (citation omitted).  The determination of whether a loan is usurious is made at the time of the transaction.  *World O World Corp. v. Patino*, 306 So.3d 1044, 1046 (Fla. DCA 2020).

As discussed below, Defendant cannot demonstrate that Note 1 charges an interest rate above the legal limit of 25%.  Further, even if Defendant can establish that Note 1 charged an illegal rate of interest, Defendant cannot, as a matter of law, establish usurious intent on the part of Essex.

## 1.   <u>Note 1 Does Not Charge a Usurious Rate of Interest</u>

Defendant contends that Note 1's effective interest rate exceeded 25 percent when accounting for the original issuance discount and the administrative and legal costs charged to Defendant.  Defendant's claim lacks merit and fails as a matter of law.

Fl. St. Ann § 687.071(3) provides, in relevant part, as follows:

> For the purpose of this chapter, the rate of interest on any loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or other obligation to pay interest shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms, whether or not said loan, advance of money, line of credit, forbearance to enforce collection of a debt, or other obligation is paid or collected by court action prior to its term, and any payment or property charged, reserved, or taken as an advance or forbearance, which is in the nature of, and taken into account in the calculation of, interest shall be valued as of the date received and shall be spread over the stated term of the loan, advance of money, line of credit, forbearance to enforce collection of a debt, or other obligation for the purpose of determining the rate of interest. . . .

Fl. St. Ann § 687.071(3).  The actual principal sum is the amount actually turned over to the borrower at the time the note is executed, and the loan completed.  *See Rollins v. Odom*, 519 So.2d 652, 656-57 (Fla. DCA 1988) (citations omitted).

It is well-established under Florida law that a borrower may legitimately agree with a lender to pay actual reasonable expenses, including attorney's fees, incurred by the lender in connection with the loan.  *See Mindlin v. Davis*, 74 So.2d 789, 792 (Fla. DCA 1954); *see also Abramowitz v. Barnett Bank of W. Orlando*, 394 So.2d 1033, 1035 (Fla. DCA 1981) quashed on other grounds ("It is also well established that a borrower can be charged the actual reasonable expenses of making a particular loan").  Thus, the amount of such fees charged against the borrower and deducted from the proceeds of the loan will not be added to the interest charged in calculating whether the interest rate is usurious.  *See Mindlin*, 74 S.2d at 792.

Here, Defendant asserts that the purchase amount of Note 1 (in the face amount of $135,000), together with the 10 percent interest rate and the $10,000 in administrative and attorneys' fee, resulted in an effective interest rate of 32.2 percent.  (Defendant's Mem. at 19-20.)  Defendant's analysis impermissibly, however, factors in the $10,000 paid by Defendant in administrative and legal fees into the usury calculation.  As discussed above, such fees may be legitimately charged by a lender without same being factored into the usury analysis.

Using the correct calculation (without factoring in the administrative and legal fees), the interest rate does not exceed 25 percent.  The correct calculation is as follows:

- Principal amount ($135,000) of Note 1 less Purchase Price ($115,000) equals $20,000 of interest for purposes of usury calculation; and

- Interest at 10 percent per annum for a period of 1 year equals $13,500 for purposes of usury calculation.

(Milazzo Aff. Exh. 1.) This results in interest of $33,500 on the $135,000 face amount of Note 1, for an effective interest rate of 24.81 percent.  Therefore, Note 1 is not criminally usurious, even if the Court applies Florida law.

Accordingly, the Court should deny Defendant's motion to dismiss this action with respect to Note 1.[4]

### 2. Defendant Cannot Establish that Plaintiff Acted With the Requisite Intent

As set forth above, in order to establish its usury defense, Defendant must also establish that Plaintiff had a corrupt intent to take more than the legal rate of interest. *See Dixon*, 276 So.2d at 819-20. "A crucial ingredient necessary to constitute the offense of usury is the intent which the act is done." *See Video Trax, Inc, v. Nationsbank, NA*, 33 F. Supp2d 1041, 1057 (S.D. Fla. 1998) (applying Florida law). Where there is no intent to evade the law and the facts show that the unlawful rate was a result of mistake or accident, no penalty attached. *See id*. A determination of usury is not predicated on whether the lender actually gets more than what the law permits, but whether there was a purpose in his mind to get more than the legal rate of interest for the use of its money. *See id*. The determination of the intent of the lender in connection with a usury defense is generally an issue of fact. *See id.*; *see also Jersey Palm-Gross, Inc. v. Paper*, 639 So.2d 664, 668 (Fla. DCA 1994) (citation omitted).

The existence of a usury savings clause in a promissory note or instrument evidencing a loan is one factor a court considers in determining whether the lender intended to extract a usurious interest rate. *Jersey Palm-Gross, Inc. v. Paper*, 658 So.2d 531, 535 (Fla. 1995). "A usury savings clause is a provision in a loan agreement that attempts to negate any other provision in the agreement that might result in the extraction of an illegal rate of interest." *Id.* at 534.[5]

---

[4] Despite urging this Court to apply Florida law to Note 1, Defendant seeks to use New York law in arguing that the discount conversion rate should be included as part of the overall interest rate in determining whether a loan is usurious. (Defendant's Mem. at 20-21.) This Court should not permit Defendant to pick and choose from whatever law suits its ends. There is no such rule under Florida law and based upon a reading of Fl. St. Ann § 687.071(3), such discount rate should not be included.

[5] The Florida Supreme Court also found that usury savings clauses serve a legitimate function in commercial loan transaction and should be enforced in appropriate circumstances. *Jersey Palm/Gross, Inc*., 658 So.2d at 535; s*ee*

Here, Defendant has not – and cannot – put forth any evidence that Essex intended to extract an illegal rate of interest in Note 1.  Further, Note 1 contains a usury savings clause which provides that if an amount deemed interest due thereunder violates the applicable law governing usury, "the applicable provision shall automatically be revised to equal the maximum rate of interest or other amount deemed interest permitted under applicable law." (Milazzo Aff. Exh. 1 § 13.)  The inclusion of such a clause would tend to show that Plaintiff did not intend to extract an illegal rate of interest in Note 1.[6]

Based upon the foregoing, even if the Court finds that Note 1 extracted an effective interest rate of over 25 percent (which it should not), Defendant has failed to establish as a matter of law that Plaintiff intended to violate the usury law.  Indeed, at best, Defendant has raised an issue of fact as to such intent. Accordingly, the Court should deny Defendant's motion to dismiss this action with respect to Note 1 on the ground that Note 1 is criminally usurious.

## POINT II

### THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS THIS ACTION WITH RESPECT TO NOTES 2-8 UNDER FED. R. CIV. P. 12(b)(3)

Alternatively, Defendant moves to dismiss the action with respect to Note 2-8 on the grounds that venue is improper.  Defendant asserts that Notes 2-8 contain a forum selection clause (Milazzo Aff. Exhs. 2-8, § 11) that requires any action brought concerning them must be brought in the state courts of Florida, and that this Court should enforce such provision and dismiss this action under Fed. R. Civ. P. 12(b)(3).  (*See* Defendant's Mem. at 22-23).  For the reasons discussed below, the Court should not enforce the forum selection clauses on Notes 2-8.

---

*also Law Office of James G. Dodrill II, PA v. Datameg Corp*., 2008 WL 11412078, at\*9 (S.D. Fla., Jun. 23, 2008) (Recognizing that under Florida law, usury savings clauses are valid).
[6] Further, the fact that Note 1 has a Nevada choice-of-law clause clearly indicates that there was no criminal intent to violate any usury law because Nevada has no such prohibitions.

Initially, the Supreme Court has determined that the appropriate way to enforce a forum selection clause is not under Rule 12(b). *See Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013). Rather, the proper mechanism to enforce a provision that, as here, points to a state court, is through the doctrine of *forum non conveniens*. *Id.* at 60-61; *see also Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014). Indeed, since venue in this district is proper under 28 U.S.C. 1441, dismissal under Rule 12(b)(3) is inappropriate. *See Tinoco v. Thesis Painting, Inc.*, 2017 WL 52554, at * 4 (D. Md., Jan. 3, 2017) ("Where, as here, a state action is removed to federal court, venue is governed exclusively by the federal removal statute, 28 U.S.C. 1441(a), rather than the general venue statute. . . . Thus, the only question that must be answered to determine the propriety of venue is whether removal was effectuated in the district for the district and division embracing the place where the suit was filed originally.") (internal quotations and citations omitted). Because the Southern District of New York encompasses Supreme Court, New York County, venue in this District is proper under 28 U.S.C. 1441, and Defendant's motion to dismiss for improper venue must be denied.

Further, even if this Court does consider Defendant's motion, this Court should determine that Defendant has waived its right to enforce the forum selection clause. A party may waive its right to seek enforcement of a forum selection clause by submitting to the jurisdiction of the court to decide substantive issues. *See Licensed Practicing Nurses Technicians and Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp.2d 393, 410 (S.D.N.Y. 2000).

Here, Defendant moved to dismiss on a substantive ground (i.e., that the Notes, including Notes 2-8, are void under Section 29(b) of the Exchange Act), and only moved to dismiss for improper venue in the alternative. (*See* Defendant's Mem. at 22-23.) This Court should not permit such gamesmanship. By seeking this Court's ruling on the substantive issue of enforceability of

the Notes, Defendant should be found to have waived its right to seek a dismissal on the ground of an improper or inconvenient forum.

Finally, the enforcement of the forum selection clause in Notes 2-8 would not be reasonable given the lack of connection to the State of Florida.  Neither party presently maintains a place of business in the State of Florida.  (Danzi Decl. ¶ 10.) Although Defendant was domiciled in the State of Florida when Notes 2-8 were executed, it no longer maintains a place of business in Florida. *Id.* Therefore, there is no benefit to Defendant to requiring this action be maintained in Florida as it will be required to defend in a court that is located as far away as this Court is to Florida. (Danzi Decl. ¶ 13.)

Further, the enforcement of the forum selection clauses in Notes 2-8 will not promote judicial efficiency.  *See U.S. Security Holdings, Inc. v. Andrews*, 2021 WL 796687 at *10 (S.D.N.Y. 2021) (while addressing differing forum-selection clauses, the Court stated that "dividing suits that arose from the same operative facts would be wasteful and inefficient.") (citations omitted). There is no dispute that the issue of the enforcement of Note 1 is properly before this Court.  There will be significant overlap in the facts with respect to the action on Note 1 and the action with respect to Notes 2-8.  It simply makes no sense to require two separate actions, in two different courts, to enforce the Notes.

Additionally, the enforcement of the forum selection clause will result in a great hardship to Plaintiff. (Danzi Decl. ¶ 11.) Plaintiff is located in New Jersey, maintains all of its records in New Jersey and its sole corporate witness (Danzi) resides in New Jersey.  *Id.*  Plaintiff would be forced to litigate the Notes in two different actions in two states: Note 1 in this Court, and Notes 2-8 in Florida, resulting in an increase in costs and resources. (Danzi Decl. ¶ 12.)

Accordingly, based upon the foregoing, the Court should deny Defendant's motion to dismiss this action with respect to Notes 2-8 based upon the forum selection clause in Notes 2-8.

## POINT III

### THE COURT SHOULD GRANT PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

As set forth above, Defendant's defenses to the enforcement of the Notes fail as a matter of law.  In its initial motion papers, Plaintiff has established its right to summary judgment on the Notes by establishing that existence of the Notes, that it is the holder of the Notes, and that Defendant failed to pay the amounts due under the Notes.  Defendant does not dispute the foregoing.

Rather, in opposition, Defendant raised two legal defenses, i.e., that the Notes are unenforceable under Section 29(b) of the Exchange Act and that Note 1 is criminally usurious and unenforceable.  As discussed above, the Court should find that both of these defenses fail as a matter of law.

Accordingly, the Court should grant summary judgment in favor of Plaintiff for the amounts due under the Notes.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Defendant's cross-motion to dismiss this action and should grant Plaintiff's motion for summary judgment on the Notes.

Dated: New York, New York
      January 10, 2022

                                          CARMEL, MILAZZO & FEIL, LLP
                                          By:_____/s/Christopher Milazzo, Esq._____
                                          Christopher Milazzo, Esq.
                                          55 West 39th Street, 18th Floor
                                          New York, New York 10018
                                          (212) 658-0458
                                          *Attorneys for Plaintiff*