ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
EAST CAPITAL INVESTMENTS CORP.,

Plaintiff,

- against -

GENTECH HOLDINGS, INC.,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/22

21 Civ. 10300 (LLS)

OPINION & ORDER

Plaintiff East Capital Investments Corp. ("ECIC") moves for
summary judgment in lieu of complaint pursuant to N.Y. C.P.L.R.
3213 against defendant GenTech Holdings, Inc. for its alleged
failure to pay amounts due under eight Convertible Promissory
Notes (the "Notes"). Defendant opposes plaintiff's motion and
cross-moves to dismiss the Complaint[1] pursuant to Fed. R. Civ. P.
12(b)(6) and 12(b)(3).

Plaintiff's motion for summary judgment in lieu of
complaint is denied. Defendant's cross-motion to dismiss is
denied in part and granted in part.

**BACKGROUND**

Between May and August of 2019, defendant GenTech issued
eight Notes to non-party Essex Global Investment Corp.
(plaintiff's predecessor in interest). See Compl. at 2 (Dkt. No.
1, Ex. A). The aggregate principal sum of the Notes totaled
$700,500. Id. The Notes are nearly identical —except for their
values and dates of issuance— each requiring payment twelve (12)

---

[1] For purposes of the Motion to Dismiss, plaintiff's Summary Judgment Motion
in Lieu of Complaint, which was the initial pleading filed in the New York
Supreme Court under CPLR 3213, is referred to as the "Complaint".

-1-

months from the issuance date, together with interest. Id. at 2-3. Their specific values and dates are listed below:

> Note 1: dated May 8, 2019, in the principal amount of $135,000;
> Note 2: dated May 23, 2019, in the principal amount of $72,500;
> Note 3: dated June 6, 2019, in the principal amount of $100,000;
> Note 4: dated June 19, 2019, in the principal amount of $32,000;
> Note 5: dated June 24, 2019, in the principal amount of $71,000;
> Note 6: dated June 27, 2019, in the principal amount of $100,000;
> Note 7: dated July 24, 2019, in the principal amount of $100,000;
> Note 8: dated August 23, 2019, in the principal amount of $90,000

Id. at 2. The Notes also include terms of conversion into shares of GenTech's common stock. See Df. Br. at 6. No principal or interest has been converted. Id.

On or about February 21, 2020, plaintiff ECIC entered into eight Note Purchase Agreements and Assignment Agreements with Essex Global, acquiring all rights, title, and interest in the Notes. Compl. at 2. Plaintiff, the current holder of the Notes, now states that defendant has failed to pay any portion of the principal amounts or accrued interest due under any of the Notes. Id. at 3.

### DISCUSSION

C.P.L.R. 3213 provides:

> When an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint[.]

N.Y. Civ. Prac. L. & R. 3213 (McKinney 2019). A plaintiff establishes a prima facie entitlement to judgment as a matter of law on a promissory note by demonstrating: (a) the existence of the promissory note executed by the defendant and (b) the defendant's failure to make payment in accordance with its

terms. See Griffon V LLC v. 11 East 36th, LLC, 90 A.D.3d 705,
706, 934 N.Y.S.2d 472, 474 (1st Dep't 2011). Once the plaintiff
establishes its prima facie case, the burden shifts to the
defendant to establish, by admissible evidence, the existence of
a genuine, triable issue of fact with respect to a bona fide
defense. See Griffon V LLC, 90 A.D.3d at 706, 934 N.Y.S.2d at
474.

CPLR 3213 also provides, "If the motion is denied, the
moving and answering papers shall be deemed the complaint and
answer, respectively, unless the court orders otherwise." The
Court's authority to "order[] otherwise" includes discretion to
dismiss. See Schulz v. Barrows, 94 N.Y.2d 624, 625-26 (2000).

## ANALYSIS

Here, plaintiff makes a prima facie case showing of
entitlement to judgment as a matter of law by proving the
existence of the subject Notes and nonpayment according to their
terms.

Defendant raises two defenses, which it argues warrant
dismissal of the action entirely pursuant to Fed. R. Civ. P.
12(b)(6) or create triable issues of fact precluding summary
judgment. It also argues that claims related to Notes 2-8 must
be dismissed entirely pursuant to Fed. R. Civ. P. 12(b)(3). The
Court address defendant's motion pursuant to Rule 12(b)(3)
first.

-3-

### 1. **Dismissal of Claims brought under Notes 2-8**

Defendant seeks to dismiss plaintiff's claims under Notes 2-8 for improper venue. See Df. Br. at 22.

Defendant's motion claiming improper venue rests on the forum selection clause in the seven Note agreements, which states that "Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of Florida." See Df. Br. at 23; Exs. 2-8 at § 11.

"The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60 (2013); see also Martinez v. Bloomberg LP, 740 F.3d 211, 221 (2d Cir. 2014)("28 U.S.C. § 1404(a), which represents merely a codification of the doctrine of forum non conveniens, governs the subset of cases in which the transferee forum is within the federal system; meanwhile, the residual doctrine of forum non conveniens, which has continuing application in federal courts, governs where the forum selection clause calls for a nonfederal forum.") (internal citations and quotation marks omitted).

"A forum selection clause is presumptively enforceable if it was reasonably communicated to the party resisting enforcement, has mandatory force, and covers the claims and parties involved in the dispute." DeBello v. VolumeCocomo

-4-

Apparel, Inc., 720 F. App'x 37, 39 (2d Cir. 2017)(citing

Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir.

2007)(quotation marks omitted)). "A party can rebut the

presumption by demonstrating that enforcement of the clause

would be unreasonable or unjust . . . .". Id.

Plaintiff does not dispute that the clause was reasonably

communicated, has mandatory force, and covers the claims and

parties included in the dispute. Its first argument against

enforcement of the forum selection clause is that defendant has

waived its right to seek enforcement of the clause because it

first moved to dismiss all the Notes on substantive grounds,

pursuant to Rule 12(b)(6), and only moved to dismiss under

12(b)(3) in the alternative. See Pl. Opp'n Br. at 16.

"There is a strong public policy in favor of enforcing

forum-selection clauses, and as such, waiver of a forum

selection clause should not be found lightly." Wachovia Bank

Nat. Ass'n v. EnCap Golf Holdings, LLC, 690 F. Supp. 2d 311, 327

(S.D.N.Y. 2010)(internal citations and quotation marks omitted).

However, a court may find that a party has waived enforcement of

the clause when the party invoking it has "taken actions

inconsistent with it, or delayed its enforcement, and other

parties would be prejudiced." Kasper Glob. Collection & Brokers,

Inc. v. Glob. Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d

542, 566-67 (S.D.N.Y. 2013). Whether a party has waived the

right to seek enforcement is a fact-intensive inquiry. Krape v.

PDK Labs Inc., 194 F.R.D. 82, 86 (S.D.N.Y. 1999).

Here, defendant removed the action from state court and, in one motion, argued for dismissal of the claims concerning Notes 2-8 on substantive grounds and, in the alternative, moved to dismiss them for improper venue. Those actions do not manifest a clear intent to waive the right to enforce the forum selection clause. See e.g., Power Auth. of New York ex rel. Solar Liberty Energy Sys., Inc. v. Advanced Energy Indus., Inc., No. 19-CV-1542-LJV-JJM, 2021 WL 4244280, at *3 (W.D.N.Y. Aug. 23, 2021) ("This Court agrees with [defendant] that only removing the case—or only moving to dismiss for failure to state a claim—would not waive its ability to enforce the forum-selection clause. But that is not what happened here. [Defendant] raised the forum-selection clause in an affirmative defense of improper venue, but it also filed several documents—including a substantive motion to dismiss—that did not ask for dismissal on venue grounds or to transfer venue."); see also Ferraro Foods, Inc. v. M/V IZZET INCEKARA, No. 01 CIV. 2682 (RWS), 2001 WL 940562, at *4 (S.D.N.Y. Aug. 20, 2001)("Courts have found implied waiver of venue where a party has repeatedly represented that venue is appropriate or actively pursued substantive motions.") (internal citations and quotation marks omitted).

Since defendant has not waived its right to seek enforcement, plaintiff can only overcome the presumption of enforceability by "making a sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Amto, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556, 570 (S.D.N.Y. 2016)(internal citation and quotation marks omitted).

Plaintiff argues that enforcement of the forum selection clause would be unreasonable or unfair for three reasons: (1) the lack of connection to the State of Florida; (2) the inefficiency in dividing the suits with overlapping facts and issues; and (3) the great hardship that will result to plaintiff from being forced to litigate in two states. See Pl. Opp'n Br. at 17.

None of those reasons sufficiently overcomes the strong policy in favor of enforcing the bargained-for forum selection clause. While it is true that there will be significant overlap in the facts with respect to Note 1 and the action on Notes 2-8, "efficiency and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory forum selection clause." Indem. Ins. Co. of N. Am. v. K-Line Am., Inc., No. 06 CIV. 0615 (BSJ), 2008 WL 4922327, at *8 (S.D.N.Y. Feb. 27, 2008); see also Amto, LLC, 168 F. Supp. 3d at 571 ("[C]ourts in the Second Circuit routinely hold that the inefficiencies involved in piecemeal litigation resulting from the enforcement of forum selection clauses is not sufficient to trump the clause."). This matter is not exceptionally large or complex, cf In re Rationis Enterprises, Inc. of Panama, No. 97

-7-

Civ. 9052(RO), 1999 WL 6364 at *3 (S.D.N.Y. Jan. 7, 1999) (overriding the forum selection clause where "the unusual size and complexity of this matter render arguments of judicial economy and equity particularly strong . . . ."), and can be fairly adjudicated by this Court and by the courts of Florida (Notes 2-8 contain a choice of law provision stating, "This Note shall be governed by and construed in accordance with the laws of the State of Florida without regard to principles of conflicts of laws." See Df. Br. at Exs. 2-8 at ¶ 11).

Florida does have a nexus to the parties and transactions and at issue, and even if plaintiff's costs and resources are increased by litigating in two states, "mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum." Weiss v. Columbia Pictures Television, Inc., 801 F.Supp. 1276, 1279 (S.D.N.Y.1992).

For those reasons, defendant's motion to dismiss the claims arising under Notes 2-8 is granted, and those claims are severed and dismissed without prejudice.[2]

The remainder of the analysis only applies to Note 1.

_____

[2] Note 1 states that "The Holder and the Company hereby mutually waive trial by jury and consent to exclusive jurisdiction and venue in the courts of the State of New York or in the Federal courts sitting in the county or city of New York." See Df. Br., Ex. B, Ex. 1 at ¶ 14. Neither party argues that the forum selection clause designating the courts of New York should be set aside in favor of another jurisdiction. However, following this ruling, if, for the sake of convenience, the parties seek to transfer the remaining action under Note 1 to a District in the state of Florida, they are free to move to do so pursuant to 28 U.S.C. 1404(a).

-8-

## 2. **First Affirmative Defense**

In its first affirmative defense, defendant argues that the Note agreement between the parties is void pursuant to Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc, because Essex, plaintiff's predecessor-in-interest, failed to register as a broker-dealer, as required by Section 15 of the Exchange Act, 15 U.S.C. § 78o(a)(1). See Df. Br., Dkt. No. 11 at 6-13.

Section 15 of the Exchange Act states, "It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered . . . .". 15 U.S.C. § 78(o)(a)(1). Under Section 29(b) of the Exchange Act,

> Every contract made in violation of any provision of this
> chapter or of any rule or regulation thereunder, and every
> contract (including any contract for listing a security on
> an exchange) heretofore or hereafter made, the performance of
> which involves the violation of, or the continuance of any
> relationship or practice in violation of, any
> provision of this chapter or any rule or regulation
> thereunder, shall be void (1) as regards the rights of any
> person who in violation of any such provision, rule, or
> regulation, shall have made or engaged in the performance of
> any such contract, and (2) as regards the rights of any person
> who, not being a party to such contract, shall have acquired
> any right thereunder with actual knowledge of the facts by
> reason of which the making or performance of such contract was
> in violation of any such provision, rule, or regulation . . .

15 U.S.C. § 78cc.

Defendant argues that Essex is a "dealer" under Section 15 because it engaged in the recurring practice of purchasing convertible notes, and therefore its failure to register as a

-9-

dealer at the time the Note was issued, or thereafter, renders Note 1 void and unenforceable pursuant to Section 29(b). See Df. Br. at 9-13.

Defendant's argument cannot prevail in this District.

Defendant argues that this District's interpretation of Section 29(b) of the Exchange Act is "manifestly wrong", and it asks the Court to depart from the settled law in favor of Fifth and First Circuit jurisprudence. See Df. Reply Br. at 2-9. Not only is it unclear whether those Circuits are in fact directly at odds with courts in this District, but defendants do not show an extraordinary reason to depart from the clearly establish law in this District, which has been analyzed and reaffirmed several times in recent years. See EMA FINANCIAL, LLC, Plaintiff, v. JOEY NEW YORK INC., et al., Defendants, No. 17-CV-9706 (VSB), 2022 WL 292920, at *18 (S.D.N.Y. Feb. 1, 2022)("This argument is unconvincing in light of recent and very clear case law from this District on this precise issue, which holds that absent language in the agreements requiring Plaintiff to register as a broker-dealer, this affirmative defense cannot succeed."). There is no such language in Note 1.

While it is an open question on this record whether Essex should have registered as a "dealer" with the SEC, even if it should have, the Note 1 agreement would not be void for Essex's failure to do so. That is because without a contractual provision requiring a party (here, Essex) to act as a broker-

dealer in performance of its contractual obligations, a contract otherwise legal at the time it was made, even if a party subsequently engages in an illegal transaction collateral thereto, will not be voided for failure to register pursuant to Sections 15 and 29(b). See EMA FINANCIAL, LLC, Plaintiff, v. JOEY NEW YORK INC., et al., Defendants, No. 17-CV-9706 (VSB), 2022 WL 292920, at *18 (S.D.N.Y. Feb. 1, 2022)("Put simply, to succeed on this affirmative defense in this District, it is essential to identify a provision in the agreement requiring Plaintiff to register as a broker-dealer.")(citation and internal quotation marks omitted); Yi v. GTV Media Grp. Inc., No. 21 CIV. 2669 (VM), 2021 WL 2535528, at *5 (S.D.N.Y. June 18, 2021) (for a contract to be unlawful "based on the defendant's status as an unregistered broker-dealer in violation of the Exchange Act, the contract ... must require the defendant to register as a broker-dealer."); EMA Fin., LLC v. Vystar Corp., No. 19-CV-01545-ALC-GWG, 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021)("[U]nder Section 29(b) of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts.")(citing Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y.), aff'd, 672 F.2d 901 (1981)); Ema Fin., LLC v. Vystar Corp., 336 F.R.D. 75, 81 (S.D.N.Y. 2020) ("Vystar contends that in entering and performing the contracts— in particular, the act of converting shares at a below-market rate and subsequently selling the shares—Ema acted as a broker-

dealer and because Ema is not registered as a broker-dealer, Ema has violated the Exchange Act. The flaw in Vystar's argument, however, is that it does not identify a provision in the contracts that obligates Ema to act as a broker-dealer."); LG Capital Funding, LLC v. ExeLED Holdings, Inc., No. 17 Civ. 4006 (RJS), 2018 WL 6547160, at *15 (S.D.N.Y. Sept. 28, 2018) ("[E]ven if LG should have registered, nothing in the Note or the SPA indicates that those contracts could not have been legally performed because LG failed to do so.") (internal quotations omitted).

Here, nothing in the operative Note agreement required either Essex or its assignee to take any action in violation of the Exchange Act. Even if Essex should have been registered as a broker-dealer, its lack of registration did not make the Note Agreement void.

### 3. **Second Affirmative Defense, Note 1**

In its second affirmative defense, Defendant argues that Note 1 is criminally usurious under Florida Law, and is therefore unenforceable. See Df. Br. at 14-21.

Note 1 contains a choice-of-law provision, which states "This Note shall be governed by and construed in accordance with the laws of Nevada applicable to contracts made and wholly to be performed within the State of Nevada and shall be binding upon the successors and assigns of each party hereto." Nevada has no statute precluding high interest rates. See Milazzo Aff. Ex. 1

-12-

at ¶ 14; Pl. Opp'n. Br. at 9-11. Defendant maintains that,
notwithstanding the choice-of-law provision in the Agreement,
Florida law, which proscribes usurious interest rates, should
apply, because the parties and the transaction lack the
requisite nexus to Nevada, and the significant contacts in this
case demonstrate that Florida is the "center of gravity" of the
transaction. See Df. Br. at 17.

### a. Choice of Law Analysis

Since Nevada and Florida law are in conflict, the success
of defendant's affirmative defense depends on what law applies
to the Note 1 Agreement.

"A federal court sitting in diversity jurisdiction applies
the choice of law rules of the forum state." AEI Life LLC v.
Lincoln Benefit Life Co., 892 F.3d 126, 132 (2d Cir. 2018).
"Where, as here, the contract[] at issue contain[s] a choice-of-
law clause[], the Court applies New York's choice-of-law rules
to determine whether and to what extent the parties' contractual
choice should be honored." EMA Fin., LLC v. NFusz, Inc., 444 F.
Supp. 3d 530, 540 (S.D.N.Y. 2020)(citing Woodling v. Garrett
Corp., 813 F.2d 543, 551 (2d Cir. 1987)(internal quotation marks
omitted).

Under New York law, "courts may refuse to enforce a choice-
of-law clause only where (1) the parties' choice has no
reasonable basis or (2) application of the chosen law would
violate a fundamental public policy of another jurisdiction with

-13-

materially greater interests in the dispute." Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006); see also TGG Ultimate Holdings, Inc. v. Hollett, No. 16 CIV. 6289 (VM), 2017 WL 1019506, at *4 (S.D.N.Y. Feb. 24, 2017)(discussing the Restatement test applied in determining whether to enforce parties' choice of law selection).

Here, Note 1 provides for the application of Nevada Law. See Milazzo Aff. Ex. 1 at ¶ 14. The transaction and parties do have at least some nexus to Nevada, as they do to at least two other states, New Jersey and Florida. Essex, the lender under the Note and plaintiff's predecessor-in-interest, is incorporated in Nevada. See Milazzo Aff. Ex. 1. Plaintiff assignee ECIC is a New Jersey corporation, see Lovatt Decl. at ¶ 7, and defendant GenTech was incorporated in Florida with its principal place of business in Florida at the time it issued the Notes. Id. ¶ 6. Here, "[t]he relevant inquiry is not [ ] whether the selected state [Nevada] is the state with the greatest number of connections" but rather, whether the "relationship to the selected state is reasonable." EMA Fin., LLC, 444 F. Supp. 3d at 541.

While Courts in this Circuit have found that a party's incorporation in the contractually agreed upon state establishes a reasonable relationship to the transactions, those cases are distinguishable. See Power Up Lending Group, Ltd. v. Danco Painting, LLC, 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016),

report and recommendation adopted 2016 WL 5349784 (E.D.N.Y.
Sept. 23, 2016) (deciding an unanswered motion for default
judgment brought by plaintiff and holding that a party's place
of incorporation was sufficient to establish a reasonable
relationship); EMA Fin., LLC v. NFusz, Inc., 444 F. Supp. 3d
530, 542 (S.D.N.Y. 2020) (finding place of incorporation
sufficient to establish a reasonable relationship where "six
different agreements negotiated between the parties at arms-
length either expressly contemplate that Nevada law is to govern
or incorporate the Nevada choice-of-law clause by reference.").

Here, the only relationship between Nevada and the
transaction at issue is that the non-party assignor Essex was
incorporated in Nevada (defendant disputes whether Essex even
operated out of or maintained its principal place of business in
Nevada, see Df. Br. at 15; Lovatto Decl. at ¶7). Plaintiff
presents no evidence of any other connection to Nevada, and the
other seven Note agreements, executed and issued within several
months of the Note 1 agreement, provide that they shall be
governed by the laws of Florida. See Df. Br., Exs. 2-8 at ¶11.
Given those facts, the Court concludes that Nevada bears no
reasonable relationship to the parties and the transaction, and
the contractually selected choice-of-law should be set aside.
See Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.,
No. 216CV1545DRHGRB, 2019 WL 1473090, at *3 (E.D.N.Y. Apr. 3,
2019) (finding no reasonable relationship when the "only contact

-15-

of this transaction with [the state selected in the contract] is that Plaintiff was incorporated there.").

The question thus shifts to whether Florida law should apply to the Note 1 Agreement. Without an effective choice-of-law provision, New York courts "look to the center of gravity of a contract to determine choice of law. Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." AEI Life LLC v. Lincoln Benefit Life Co., 892 F.3d 126, 135 (2d Cir. 2018)(internal citations and quotation marks omitted).

Analysis of the contacts in this action shows that the "center of gravity" of Note 1 is indeed Florida. Defendant borrower was incorporated in Florida and maintained its principal place of business in Florida, where it negotiated, executed, and issued the Notes. See Lovatt Decl. at ¶¶ 6, 21. It also received the funds in a Florida bank account. Id. ¶ 21. The other seven Notes were executed around the same time and are expressly subject to Florida law. Therefore, the Court will apply Florida law to Note 1.

### b. Criminal Usury

Under Florida Law, it is criminal usury for any person extending credit to any other person to knowingly and willfully charge interest at a rate over 25% per annum, and no extension

of credit made in violation is an enforceable debt. See Fla.
Stat. Ann. § 687.071. The four elements of usury under Florida
law are:

> (1) There must be a loan express or implied; (2) An
> understanding between the parties that the money lent shall be
> returned; (3) That for such a loan a greater rate of interest
> than is allowed by law shall be paid or agreed to be paid, as
> the case may be; and (4) There must exist a Corrupt intent to
> take more than the legal rate for the use of the money loaned.

World O World Corp. v. Patino, 306 So. 3d 1044, 1045 (Fla. Dist.
Ct. App. 2020) (citing Dixon v. Sharp, 276 So.2d 817, 819-20
(Fla.19730)). Usury is an affirmative defense and the defendant
bears the burden of proof by clear and convincing evidence. See
Naples Cay Dev. Corp. v. Ferris, 555 So. 2d 1272, 1273 (Fla.
Dist. Ct. App. 1989).

Elements one and two are undisputed. To determine whether
defendant satisfies element three, the Court must calculate the
interest rate sought to be collected under the Note. Section
687.03(3) of the Florida Statutes sets forth the steps to
calculate such interest:

> The spreading of any such advance or forbearance for the
> purpose of computing the rate of interest shall be calculated
> by first computing the advance or forbearance as a percentage
> of the total stated amount of the loan. This percentage rate
> shall then be divided by the number of years, and fractions
> thereof, of the loan according to its stated maturity date,
> without regard to early maturity in the event of default. The
> resulting annual percentage rate shall then be added to the
> stated annual percentage rate of interest to produce the
> effective rate of interest for purposes of this chapter.

Fla. Stat. Ann.§ 687.03(3); see also St. Petersburg Bank & Tr.
Co. v. Hamm, 414 So. 2d 1071, 1073 (Fla. 1982)(holding that
Section 687.03(3) should be applied in calculating the effective

interest rate and breaking down its application into three
stated steps).

Under Note 1, the principal amount is $135,000, the stated
interest rate is 10%, and the term is 1-year. Those terms are
undisputed. Defendant states that Essex only actually paid a
$115,000 purchase price on the $135,000 face value amount of the
Note. Plaintiff does not dispute that assertion, or the amount
stated. The main dispute is whether the $10,000 "administrative
and legal costs fee" paid by defendant to Essex under Note 1
should be included in the computation of the advance paid,
pursuant to the first step of Section 687.03(3)("computing the
advance or forbearance as a percentage of the total stated
amount of the loan.").

Using the method prescribed by the courts of Florida,
defendant includes the $20,000 difference between the purchase
price and the stated face value of the Note, plus an additional
$10,000 in administrative and legal costs fees, in its
calculation of the advance. It then divides the advance of
$30,000 ($10,000 in legal fees plus the $20,000 retained by
Essex) by the total stated amount of the loan, $135,000,
equaling 22.22%. That percentage rate is spread over one year
(the Note's stated maturity date), equaling 22.22%. The
resulting annual percentage of 22.22% is then added to the
stated annual percentage rate of interest of 10%, totaling an
effective interest rate of 32.22%, which is greater than the

allowable 25% rate. See Df. Br. at 18-20.

Plaintiff argues that the $10,000 should not be added to the interest charges, because under Florida law, a borrower may "legitimately agree with the lender to pay actual reasonable expenses of examining and appraising security offered for a loan as well as the costs of closing the transaction, even though such payments, when added to the interest contracted for, exceed the maximum interest allowed by law." Mindlin v. David, 74 So.2d 789, 792 (Fla. DCA 1954). According to plaintiff, the "correct calculation" of the interest rate would therefore be:

> Principal amount ($135,000) of Note 1 less Purchase Price ($115,000) equals $20,000 of interest for purposes of usury calculation; and Interest at 10 percent per annum for a period of 1 year equals $13,500 for purposes of usury calculation.(Milazzo Aff. Exh. 1) This results in interest of $33,500 on the $135,000 face amount of Note 1, for an effective interest rate of 24.81 percent.

Pl. Opp'n. Br. at 13.[3] That effective 24.81% interest rate is allowable under Florida law.

However, while plaintiff is correct that a borrower can be charged the actual reasonable expenses of making a particular loan, "bogus charges for services not actually rendered will not be allowed to cloak the extraction of illegal interest." Abramowitz v. Barnett Bank of W. Orlando, 394 So. 2d 1033, 1035

---

[3] Plaintiff's interest calculation does not apply the method set forth in Fla. Stat. Ann. § 687.03(3) but reaches the same result. Applying the correct method, the advance of $20,000 (not including the $10,000 in legal fees) divided by the total stated amount of the loan, $135,000, equals 14.815%. That percentage rate spread over one year (the Note's stated maturity date) equals 14.815%. The resulting annual percentage of 14.815% is then added to the stated annual percentage rate of interest of 10%, totaling an effective interest rate of 24.815%, which is less than the allowable 25% rate.

(Fla. Dist. Ct. App. 1981), decision quashed on other grounds, 419 So. 2d 627 (Fla. 1982)(citing Williamson v. Clark, 120 So.2d 637 (Fla.2d DCA 1960)).

At this point, there are not enough facts on the record to determine whether the $10,000 in legal fees and administrative costs were legitimate costs Essex incurred in preparing and executing the loan.[4] The Court therefore cannot conclude cannot whether the interest exceeds the allowable 25%. Similarly, defendant raises a genuine dispute of fact as to whether Essex acted with a "corrupt intent" to extract more than the legal rate of interest.[5] See Df. Br. at 1, 3-4 (setting forth facts regarding Essex and its former Vice President of Sales, Christopher Danzi, and detailing the charges brought against the Company by the SEC, the pre-existing lending relationship between Essex and GenTech, and the subsequent assignment of the Notes at issue to plaintiff company ECIC, which was formed by Christopher Danzi shortly after Essex was named as a defendant in the SEC action).

Therefore, summary judgment is denied on the remaining

---

[4] Notes 2-8 did not require defendant to pay any administrative and legal costs fees. At this stage, the Court cannot say whether that fact favors one party or the other. Documents and potentially testimony will be required to show how the $10,000 in fees were used and whether they were reasonable.

[5] Although plaintiff points to the existence of a usury savings clause in the Note as evidence that Essex did not intend to extract an illegal rate of interest, Pl. Opp'n. Br. at 15., as defendant aptly points out, under Nevada law (the law Essex sought –and now plaintiff seeks– to apply to the Note agreement), there are no statutes precluding high interest rates, so the materiality of a usury savings clause seems slight and, at best, shows nothing regarding Essex's intent.

claim for payment under Note 1.

## CONCLUSION

Plaintiff's motion for summary judgment is denied.

Defendant's cross-motion to dismiss is granted as to claims

under Notes 2-8 on the grounds of forum non conveniens, and

denied to the extent it seeks dismissal of claims under Note 1.

All claims arising under Notes 2-8 are dismissed for improper

venue without prejudice.

So Ordered.

Dated:   New York, New York
         March 9, 2022

                                        _Louis L. Stanton_
                                        Louis L. Stanton
                                        U.S.D.J.